United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CORSAIR GAMING, INC.,<br><br>       Plaintiff,<br><br>    v.<br><br>CHOICE ELECTRONICS INC.,<br><br>       Defendant. | Case No. 5:25-cv-00045-BLF<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS CHOICE ELECTRONICS INC.'S COUNTERCLAIMS**<br><br>[Re: ECF No. 36] |

Before the Court is Plaintiff/Counterclaim-Defendant Corsair Gaming, Inc.'s ("Corsair's") and Third-Party Defendant Corsair Memory Inc.'s ("Corsair Memory's") (collectively, the "Corsair Parties") motion to dismiss Defendant/Counterclaim-Plaintiff Choice Electronics Inc.'s ("Choice's") amended counterclaims under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 36 ("Mot."). Choice filed an opposing brief. ECF No. 39 ("Opp."). The Corsair Parties filed a reply brief. ECF No. 40. The Court heard oral argument on July 17, 2025. ECF No. 45.

For the reasons below, the motion is GRANTED-IN-PART and DENIED-IN-PART.

## I.    BACKGROUND

Corsair is a manufacturer and seller of computer and gaming products under the "CORSAIR" brand ("Corsair Products"). *See* Defendant's Amended Counterclaims ("Counterclaims") ¶ 10, ECF No. 34.[1] Corsair Memory is a subsidiary of Corsair and is the trademark registrant and owner-of-record of U.S. Trademark Registration No. 3,209,882 for the

---

[1] The Court accepts as true the factual allegations set forth in Choice's amended counterclaims for the purpose of adjudicating this motion. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

United States District Court
Northern District of California

1  mark "CORSAIR" (the "CORSAIR Mark").  *Id.* ¶ 12.  Corsair Products intended for resale within

2  the United States market are protected by a limited warranty (the "Corsair Warranty"), which by

3  its terms is restricted to Corsair Products purchased either directly through Corsair or an

4  authorized Corsair Product reseller.  *Id.* ¶ 63.  Both Corsair and Choice sell the Corsair Products

5  on Amazon through their respective Amazon storefronts.  *Id.* ¶¶ 16, 29.

6      Amazon permits vendors and third-party sellers to create "variation" relationships between

7  substantially similar products that differ only in specific, narrow ways.  *Id.* ¶ 30.  Products within a

8  variation relationship appear on the same product detail page, which displays each product in the

9  variation relationship as an alternative that the shopper may select for purchase.  *Id.* ¶ 31.  Owing

10  to the close similarity of products within a variation relationship, the product detail page displays

11  the total number of ratings and the average star rating for all products in a given variation

12  relationship.  *Id.* ¶ 33.  For example, a product detail page for a shirt may offer for sale the same

13  shirt design in various colors and sizes, displaying the total number of ratings and average star

14  rating for the shirt across the range of colors and sizes offered.  *See id.* ¶ 32.  To avoid consumer

15  confusion, Amazon has implemented a "variation policy," which prohibits vendors from grouping

16  together fundamentally different products within the same variation relationship.  *Id.* ¶¶ 35–36.

17      Corsair filed a complaint against Choice for violations of the Lanham Act, 15 U.S.C.

18  §§ 1051–1141n, and the California Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code

19  § 17200.  ECF No. 1 ("Compl.").  Corsair alleges that, despite never having been authorized or

20  otherwise granted permission to sell Corsair Products, Choice has represented "that the Corsair

21  products it offers for sale on Amazon are 'new' despite the fact that they are used, closed out,

22  liquidated, counterfeit, and/or non-genuine product of unknown origin."  *Id.* ¶¶ 20–21.

23      In its amended answer, Choice asserts five counterclaims, alleging that the CORSAIR

24  Mark has been abandoned, that Corsair improperly groups Corsair Products together under

25  Amazon's variation system, and that the Corsair Warranty violates a variety of consumer

26  protection regulations and laws.  Counterclaims ¶¶ 83–133.  Choice seeks (1) declaratory

27  judgment of noninfringement, (2) an order directing the Director of the United States Patent and

28  Trademark Office to cancel the CORSAIR Mark, (3) monetary and injunctive relief for false

1    advertising under the Lanham Act, (4) monetary and injunctive relief for unlawful business acts

2    under section 17200 of the UCL, and (5) monetary and injunctive relief for deceptive trade

3    practices under section 349 of the New York General Business Law ("GBL").  *Id.*

### II.    LEGAL STANDARD

5        Dismissal is appropriate under Rule 12(b)(1) if a party lacks Article III standing.  *See*

6    *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  To establish standing, a party must

7    demonstrate (1) an "injury in fact" that is (2) fairly traceable to the challenged conduct and

8    (3) likely to be "redressed by a favorable judicial decision."  *Lujan v. Defs. of Wildlife*, 504 U.S.

9    555, 560–61 (1992).  "To establish injury in fact, a plaintiff must show that he or she suffered an

10    invasion of a legally protected interest that is concrete and particularized and actual or imminent,

11    not conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal

12    quotation marks omitted) (quoting *Lujan*, 504 U.S. at 560).

13        Dismissal is appropriate under Rule 12(b)(6) "if the complaint fails to state a cognizable

14    legal theory or fails to provide sufficient facts to support a claim."  *Sinclair v. City of Seattle*,

15    61 F.4th 674, 678 (9th Cir. 2023).  When considering a Rule 12(b)(6) motion, a court must "take

16    all allegations of fact as true and construe them in the light most favorable to the nonmoving

17    party."  *Id*.  While a complaint need not contain detailed factual allegations, it "must contain

18    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

19    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

20    570 (2007)).  A claim is factually plausible when the factual content pleaded allows a court "to

21    draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### III.    DISCUSSION

23        The Corsair Parties move to dismiss the counterclaims in their entirety, arguing that each

24    counterclaim must be dismissed pursuant to Rule 12(b)(6) and that the third, fourth, and fifth

25    counterclaims must also be dismissed pursuant to Rule 12(b)(1).

#### A.  Declaratory Judgment of Non-Infringement

27        The Corsair Parties first argue that the Court should exercise its discretion to dismiss

28    Choice's first counterclaim for declaratory judgment of non-infringement of the CORSAIR Mark

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    because it is duplicative of Corsair's trademark infringement claim, such that adjudication of the

2    counterclaim serves no useful purpose.  Mot. at 13.  The decision whether to dismiss a

3    counterclaim for declaratory judgment is a matter committed to the Court's discretion.

4    *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 533 (9th Cir. 2008).  In determining

5    whether dismissal is appropriate, the Court "focus[ses] on whether the counterclaim[] serve[s] any

6    useful purpose[] and should dismiss . . . a redundant counterclaim only when it is clear that there is

7    a complete identity of factual and legal issues between the complaint and the counterclaim."

8    *Stickrath v. Globalstar, Inc.*, No. 07-cv-1941-TEH, 2008 WL 2050990, at *3 (N.D. Cal. May 13,

9    2008) (second and third alterations in original) (internal quotation marks and citation omitted).

10            The Court disagrees with the Corsair Parties' suggestion that the counterclaim serves no

11    useful purpose.  As an initial matter, courts have consistently observed that declaratory judgment

12    is often particularly appropriate in intellectual property cases, where "mere dismissal of a

13    plaintiff's bill does not always adjudicate every aspect of the controversy or give the defendant all

14    the relief to which he may be entitled."  *Dominion Elec. Mfg. Co. v. Edwin L. Wiegand Co.*,

15    126 F.2d 172, 174 (6th Cir. 1942).  Here, declaratory judgment of non-infringement would

16    "ensure[] that [Choice] is protected against the possibility" that Corsair "will dismiss the suit or

17    that the infringement action will not resolve all of the issues between the parties."  *GDM Enters.,*

18    *LLC v. Astral Health & Beauty, Inc.*, No. 17-cv-1069-SRB, 2018 WL 3453475, at *2 (W.D. Mo.

19    July 17, 2018) (internal citations omitted).

20            The pendency of Choice's counterclaim also affects the availability of attorneys' fees

21    under the Lanham Act.  *Cf. Stickrath*, 2008 WL 2050990, at *5.  The availability of other forms of

22    relief such as attorneys' fees is another useful function served by the counterclaim counselling

23    against dismissal.  *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 15-cv-4441-WHA, 2016 WL

24    3383758, at *2 (N.D. Cal. June 20, 2016) (denying motion to dismiss declaratory judgment

25    counterclaim due to the availability of attorneys' fees).  Moreover, the Corsair Parties have not

26    identified any prejudice that they would suffer if the counterclaim is not dismissed.  *Openwave*

27    *Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-cv-253-WHO, 2016 WL 6393503, at *11

28    (N.D. Cal. Oct. 28, 2016).

4

**B. Cancellation of the CORSAIR Mark**

The Corsair Parties next dispute Choice's assertion that the CORSAIR Mark is subject to cancellation pursuant to 15 U.S.C. § 1064(3) for actual abandonment or naked licensing. Specifically, they argue that this counterclaim fails as a matter of law and has not been pleaded with sufficient factual specificity. Choice alleges that Corsair Memory has abandoned the CORSAIR Mark because its "naked licensing and/or uncontrolled acquiescence of Corsair Gaming's use of the CORSAIR trademarks has caused the marks to lose trademark significance, and as a consequence, the public no longer associates these marks with a single source of goods or services." Counterclaims ¶ 101. The Court agrees with Choice that its second counterclaim states a claim for cancellation of the mark.

Trademark registrations are subject to cancellation "[a]t any time if the registered mark . . . has been abandoned." 15 U.S.C. § 1064(3). A mark is deemed abandoned "[w]hen any course of conduct of the owner, including acts of omission as well as commission, causes the mark to . . . lose its significance as a mark." *Id.* § 1127. A trademark registrant may abandon its mark by engaging in "naked licensing," which occurs when the registrant "fails to exercise adequate quality control over the licensee" in a manner that is "inherently deceptive." *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515–16 (9th Cir. 2010); *see also Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 595 (9th Cir. 2002).

The Corsair Parties first argue that "allegations regarding use between [the Corsair Parties] cannot, as a matter of law, form the sole basis for a claim of abandonment or 'naked licensing'" because Corsair and Corsair Memory are related entities. Mot. at 4. In support of this theory, the Corsair Parties invoke 15 U.S.C. § 1055, which provides that use of a mark by "related companies" is deemed to "inure to the benefit of the registrant" and "shall not affect the validity of such mark or of its registration." The problem with this argument is that it improperly assumes that Corsair and Corsair Memory are in fact "related companies" within the meaning of the Lanham Act. While it is of course true that use by a trademark registrant's related company inures to the benefit of the trademark registrant (and thus does not result in abandonment), the term "related company" is specifically defined as "any person *whose use of a mark is controlled by the*

United States District Court
Northern District of California

1    *owner of the mark with respect to the nature and quality of the goods or services* on or in

2    connection with which the mark is used."  15 U.S.C. § 1127 (emphasis added).

3            The Corsair Parties are accordingly incorrect in their assertion that the corporate

4    relationship between Corsair and Corsair Memory as a matter of law precludes abandonment of

5    the CORSAIR Mark.  The doctrine of naked licensing flows from the trademark registrant's "duty

6    to control quality," and "[t]he key to compliance with the quality control requirement for

7    trademark licensing is actual control: the presence or lack of a contractual right to control is

8    secondary."  2 *McCarthy on Trademarks and Unfair Competition* § 18:48 (5th ed.).  The Corsair

9    Parties' reference to *Mayson-Dixon Strategic Consulting, LLC v. Mason-Dixon Polling &*

10   *Strategic Consulting, Inc.*, 324 F. Supp. 3d 569 (D. Md. 2018), *see* Mot. at 5, is inapposite because

11   that case involved two companies owned and controlled by the same individual.  *See Mayson-*

12   *Dixon*, 324 F. Supp. at 577.  Here, by contrast, Choice has alleged that "Corsair Memory . . . does

13   not control Corsair Gaming" and "fails to actually control the quality of products on which the

14   CORSAIR trademarks are used."  Counterclaims ¶¶ 98–99.  Although it is unclear at this stage

15   whether Choice's assertion that Corsair Memory exercises no control over Corsair in this respect

16   will bear out in the evidence, that issue is best left for factual discovery, not resolution at the

17   pleadings stage.

18           The Corsair Parties also argue that that Choice "merely concludes that the [CORSAIR

19   Mark has] been abandoned without alleging facts to show how or why."  Mot. at 4.  But Choice

20   has alleged that Corsair Memory does not exercise any control over Corsair and has allowed

21   Corsair to claim the CORSAIR Mark as its own publicly while "failing to exercise adequate

22   control over a substantial percentage of Corsair Gaming's goods bearing the CORSAIR

23   trademark."  Counterclaims ¶ 94.  While the Court is mindful that, as a theory of abandonment,

24   "the proponent of a naked licensing theory must meet a 'stringent standard of proof,'" *Threshold*

25   *Enters. Ltd. v. Lifeforce Digital Inc.*, 730 F. Supp. 3d 940, 944 (N.D. Cal. 2024) (internal citation

26   omitted), when construed in the light most favorable to Choice, the second counterclaim plausibly

27   suggests that Corsair and Corsair Memory are not "related companies," that Corsair Memory has

28   failed to adequately exercise control over the use of the CORSAIR Mark, and that the CORSAIR

1    Mark has accordingly been abandoned.

2         **C.  Lanham Act False Advertising**

3         The Corsair Parties next argue that Choice's counterclaim for false advertising pursuant to

4    the Lanham Act, 15 U.S.C. § 1125, must be dismissed pursuant to Rule 12(b)(1) because Choice

5    lacks standing.  *See* Mot. at 6.  They argue in the alternative that the counterclaim must be

6    dismissed pursuant to Rule 12(b)(6) because it fails to meet the heightened pleading standard of

7    Rule 9(b), which governs allegations of fraud or deception.  *See id.*  In its third counterclaim,

8    Choice alleges that Corsair "knowingly manipulates Amazon listings in order to show inflated and

9    unwarranted reviews for its products by misleadingly listing new products as 'variations' of pre-

10   existing products, instead of creating new listings for new products," causing consumers to be

11   "deceived and confused into believing that Corsair Products have amassed significant amounts of

12   positive reviews and high ratings, when, in fact, such reviews and ratings merely relate to a prior

13   product."  Counterclaims ¶¶ 108–09.  Neither of the Corsair Parties' arguments are persuasive.

14        The Corsair Parties first argue that Choice fails to meet the injury-in-fact requirement for

15   Article III standing.  Mot. at 7.  Article III standing implicates the subject matter jurisdiction of

16   this court and is independent of statutory standing under the Lanham Act.  *See TrafficSchool.com,*

17   *Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011).  Factual allegations of "lost sales and

18   damage to [a competitor's] business reputation" may be sufficient to confer "standing under

19   Article III to press [a] false-advertising claim."  *Lexmark Int'l, Inc. v. Static Control Components,*

20   *Inc.*, 572 U.S. 118, 125 (2014).  A party may allege an injury in fact "by creating a chain of

21   inferences showing how the false advertising could harm [their] business."  *Scilex Pharms., Inc.*

22   *v. Sanofi-Aventis U.S. LLC*, No. 21-cv-1289-JST, 2021 WL 11593043, at *3 (N.D. Cal. Aug. 16,

23   2021).  "Evidence of direct competition is strong proof that plaintiffs have a stake in the outcome

24   of the suit, so their injury isn't conjectural or hypothetical."  *Id.* (quoting *TrafficSchool.com*,

25   653 F.3d at 825–26).

26        The Corsair Parties argue that the amended counterclaims "contain[] no factual allegations

27   of injury flowing from the challenged conduct."  Mot. at 7.  This is hardly a fair reading.  Choice

28   alleges, for example, that Choice and Corsair are "competitors in the sale of computer and gaming

United States District Court
Northern District of California

1   products," in part because both offer Corsair Products for sale through their respective Amazon

2   storefronts.  Counterclaims ¶¶ 18, 105–06.  Choice further alleges that Corsair engages in false

3   advertising by creating variation listings for fundamentally different and unrelated products.  *Id.*

4   ¶ 51.  This practice plausibly deceives consumers into wrongly believing that new, fundamentally

5   different products are substantially similar to previously listed products, even if they differ in more

6   ways than just color and size.  *Id.* ¶¶ 52–53.  Choice further alleges that customers wrongly

7   believe the accumulated reviews for the older products belong to, or otherwise endorse, a

8   substantially different product.  *Id.* ¶¶ 52–55.  These allegations sufficiently demonstrate a chain

9   of inferences directly linking Corsair's alleged advertising to direct harm to its business, with the

10  third counterclaim explaining that "Corsair Gaming's false advertising conduct entices consumers

11  to purchase products from Corsair Gaming and in turn harms competitors, including Choice

12  Electronics, by diverting customers away from them."  *Id.* ¶¶ 56, 113–14.[2]

13          The Corsair Parties' Rule 12(b)(6) argument is similarly unavailing.  They argue that,

14  because Choice's false advertising counterclaim is predicated on Corsair's purported intentional

15  manipulation of its product listings' variation relationships, Choice must satisfy Rule 9(b)'s

16  elevated pleading standard, which requires that "[i]n alleging fraud or mistake, a party must state

17  with particularity the circumstances constituting fraud or mistake."  The Corsair Parties urge that,

18  "[w]hile the counterclaim identifies CORSAIR's 2023 Monitor and 2024 Monitor as improperly

19  listed, it fails to specify any other CORSAIR products alleged to be unlawfully included."  *Id.*

20  Choice responds that Rule 9(b) "does not apply here because the false advertising claim does not

21  sound in fraud" and that, in any case, the amended answer contains sufficient factual allegations to

22  satisfy the heightened pleading standard.  Opp. at 12 (quoting *SKWS Enters., Inc. v. Levonchuck*,

23  No. 17-cv-3327-MLR, 2018 WL 11351584, at *3 (C.D. Cal. Apr. 2, 2018)).

24          The Ninth Circuit has not yet decided whether Rule 9(b) applies to Lanham Act claims.

25

26  ────────────────

27  [2] The Court disagrees with the Corsair Parties' argument that enjoining the challenged conduct would not redress the alleged harm for Article III standing purposes because Amazon controls the product pages on its e-commerce platform.  *See* Reply at 4.  The amended counterclaims

28  specifically allege that vendors like Corsair Gaming exert control over the variation relationships displayed by Amazon.  Counterclaims ¶¶ 30, 36–37.

United States District Court
Northern District of California

1    That said, "[d]istrict courts in the Ninth Circuit have held that the heightened pleading standard of

2    [Rule 9(b)] applies to false advertising claims and requires the plaintiff to plead the 'time, place,

3    and specific content of the false representations,' the identities of the parties to the

4    misrepresentation, and what about the statement is claimed to be misleading." *Seoul Laser*

5    *Dieboard Sys. Co., Ltd. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1200 (S.D. Cal. 2013).

6    Assuming that Rule 9(b) applies, the Court concludes that Choice has met the standard.  The third

7    counterclaim specifies with sufficient detail how Corsair has allegedly created a variation

8    relationship between three different computer monitors despite substantial technological

9    differences.  Counterclaims ¶¶ 37–49.

10          Acknowledging that "the counterclaim identifies CORSAIR's 2023 Monitor and

11    2024 Monitor as improperly listed" the Corsair Parties nonetheless argue that "it fails to specify

12    *any other* CORSAIR products alleged to be unlawfully included."  Mot. at 8 (emphasis added).

13    But Rule 9(b) requires only that the circumstances of fraud be stated with particularity and permits

14    other facts to be pleaded generally.  It is not, as the Corsair Parties suggest, a rigid rule

15    "requir[ing] a specific number or a precise time frame."  *Cooper v. Pickett*, 137 F.3d 616, 627

16    (9th Cir. 1997).  Choice is not required under Rule 9(b) to catalogue every single instance in

17    which Corsair improperly created a variation listing.  *See Shinde v. Nithyananda Found.*, No. 13-

18    cv-363-JGB, 2013 WL 12132050, at *9 (C.D. Cal. July 19, 2013) ("Rule 9(b) does not require a

19    plaintiff to set forth a complete history of every transaction." (internal quotations and citations

20    omitted)).

21          **D.  UCL Unfair Competition**

22          The Corsair Parties next argue that Choice's claim under the UCL must be dismissed

23    because Choice lacks standing to challenge the Corsair Warranty or, alternatively, because the

24    amended counterclaim fails to plausibly allege any predicate wrongdoing by Corsair.  Mot. at 9–

25    10.  In its fourth counterclaim, Choice alleges that Corsair's alleged (1) improper manipulation of

26    Amazon variation relationships and (2) misleading use of the Corsair Warranty each constitute

27    unlawful, unfair, or fraudulent business acts and practices within the meaning of the UCL.

28    Counterclaims ¶ 121.  As discussed below, the Court agrees with the Corsair Parties that Choice

United States District Court
Northern District of California

1      has not sufficiently pleaded factual allegations showing that it suffered a concrete and

2      particularized harm because of the Corsair Warranty and accordingly lacks Article III standing to

3      challenge the Corsair Warranty through its UCL claim.  Because the Court has concluded that

4      dismissal of Choice's Lanham Act false advertising claim is not warranted, however, the Court

5      concludes that to the extent the fourth counterclaim is based on the same predicate Lanham Act

6      violation, it survives the motion to dismiss.

7           The UCL's coverage is "sweeping," and its standard for wrongful business conduct is

8      "intentionally broad."  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir.2006).  Each

9      prong—fraudulent, unfair, and unlawful—is independently actionable.  *Lozano v. AT & T*

10     *Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  In an action for unfair competition, a

11     plaintiff may establish Article III standing by alleging "'a chain of inferences showing how

12     defendant's [conduct] could harm plaintiff's business' to establish injury in fact.  In a lawsuit

13     brought by a plaintiff against a competitor, claims that permit an inference of impending loss of

14     profits due to the competitor's wrongful actions suffice to establish an injury in fact."  *NJOY, LLC*

15     *v. Imiracle (HK) Ltd.*, 760 F. Supp. 3d 1084, 1102 (S.D. Cal. 2024) (internal citation omitted)

16     (quoting *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011)).

17          The Corsair Parties first argue that Choice lacks Article III standing to challenge the

18     Corsair Warranty because it has not sufficiently pleaded a concrete and particularized injury.

19     Specifically, the Corsair Parties urge that, because the Corsair Warranty is at its core a contract

20     between Corsair and its end-user customers, any harms flowing from the alleged

21     misrepresentations contained therein are felt by consumers, not Choice.  *See* Mot. at 11.  Choice

22     responds that it "has alleged a chain of inference between the damages it suffered and Corsair

23     Gaming's unlawful Warranty and Warranty Disclaimer."  Opp. at 16.  But the amended

24     counterclaim fails to state any factual allegations detailing how the Corsair Warranty contributed

25     to any injury to Choice.

26          Rather, Choice conclusorily alleges that the purportedly unenforceable Corsair Warranty

27     misleads consumers by creating the false impression that Corsair Products purchased through

28     Choice's Amazon storefront are not subject to the same protections and thus has "discouraged and

United States District Court
Northern District of California

10

1    dissuaded consumers from purchasing genuine Corsair Products from Choice Electronics." *See id.*

2    ¶¶ 78–81.  These conclusory and wholly speculative legal conclusions, however, do not state a

3    claim.  *Twombly*, 550 U.S. at 564–65; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055

4    (9th Cir. 2008) ("Nor is the court required to accept as true allegations that are merely conclusory,

5    unwarranted deductions of fact, or unreasonable inferences.").  Simply put, because Choice fails to

6    allege any specific factual allegations linking the Corsair Warranty to a concrete, particularized

7    injury, Choice does not have Article III standing to challenge the Corsair Warranty through its

8    UCL claim.  *See Allbirds, Inc. v. Giesswein Walkwaren AG*, No. 19-cv-05638-BLF, 2020 WL

9    6826487, at *4 (N.D. Cal. June 4, 2020).

10         In addition to their Article III argument, the Corsair Parties argue that Choice cannot bring

11    its UCL claim because the predicate wrongdoings Choice alleges—16 CFR §§ 701.3(a), 702.3(c),

12    and 15 U.S.C. § 2302—create a private action only in *consumers*, not competitors.  Mot. at 9–10.

13    The Court disagrees.  Section 17200 of the UCL covers "any business practice that violate[s] an

14    independent statutory duty."  *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 929

15    (N.D. Cal. 2018).  Section 17200 does not require that the statute or regulation forming the

16    predicate unlawful conduct provide a private right of action.  *See, e.g.*, *Chabner v. United of*

17    *Omaha Life Ins. Co.*, 225 F.3d 1042 (9th Cir.2000); *Sanchez v. Nurture, Inc.*, 626 F. Supp. 3d

18    1107, 1118 (N.D. Cal. 2022).

19         However, to the extent that Choice purports to allege a violation of section 369-b of the

20    New York GBL as the predicate violation for section 12700 of the UCL, this is a bridge too far.

21    As explained *infra*, several courts have rejected attempts by private plaintiffs to arrogate the role

22    of the New York Attorney General, as contemplated by the state legislature, in enforcing GBL

23    section 369-b themselves.  Section 17200 is not a freestanding license to assert claims "premised

24    on the 'type of activities covered in' [disparate statutes.]"  *Christensen v. Provident Life & Acc.*

25    *Ins. Co.*, No. 07-cv-04789, 2008 WL 410238, at *2 (N.D. Cal. Feb. 12, 2008) (citation omitted).

26         To the extent that the fourth counterclaim alleges a violation of the Lanham Act instead of

27    the alleged impropriety of the Corsair Warranty as the predicate wrongdoing for liability under

28    section 17200 of the UCL, the Court agrees with Choice that dismissal is improper.  In this

United States District Court
Northern District of California

1    respect, the Corsair Parties' Rule 12(b)(6) argument as to the UCL claim largely tracks with their

2    argument against Choice's Lanham Act false advertising claim.  *See* Mot. at 12 (stating that the

3    state law claims "rise and fall with [Choice's] claims under the Lanham Act").  Because the Court

4    concludes that Choice has sufficiently pleaded factual allegations supporting a claim for Lanham

5    Act false advertising, the Court concludes that Choice has sufficiently stated a claim under the

6    UCL as well.  *See Scilex Pharms.*, 2022 WL 20286688, at \*9 (explaining that UCL claims are

7    "substantially congruent to claims made under the Lanham Act" and accordingly using the same

8    analysis to deny a motion to dismiss UCL and Lanham Act claims).

9           **E.  GBL Deceptive Business Practices**

10          The Corsair Parties attack Choice's fifth counterclaim under section 349 of the New York

11   GBL on substantially the same grounds as their argument against Choice's fourth counterclaim

12   under section 17200 of the UCL.  *See* Mot. at 9–12.  That is, the Corsair Parties argue that Choice

13   lacks standing to challenge the Corsair Warranty and fails to allege wrongdoing under New York

14   law.  For the same reasons described supra, the Court concludes that Choice fails to allege an

15   Article III injury in fact caused by the Corsair Warranty but sufficiently alleges predicate

16   wrongdoing under the Lanham Act.  *See Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, No. 16-

17   cv-3645-KPF, 2017 WL 3129799, at \*14 (S.D.N.Y. Mar. 28, 2024) (denying motion to dismiss

18   GBL § 349 and Lanham Act claim for false advertising).

19          To the extent that Choice's counterclaim under section 349 of the GBL is based on a

20   predicate violation of section 369-b, however, the Court agrees with the Corsair Parties that it

21   must be dismissed.  The Court has recently had occasion to discuss a claim for declaratory relief

22   under section 369-b and concluded that New York's legislative scheme "demonstrates that the

23   New York legislature intended that the Attorney General would enforce this law, such that there is

24   no private right of action under the statute."  *Cisco Sys., Inc. v. Beccela's Etc., LLC*, 403 F. Supp.

25   3d 813 (N.D. Cal. 2019); *see also Application of Whitehaven S.F.*, *LLC v. Spangler*, 45 F. Supp.

26   3d 333, 349 n.11 (S.D.N.Y. 2014), *aff'd sub nom. Whitehaven S.F., LLC v. Spangler*, 633

27   F. App'x 544 (2d Cir. 2015) ("[T]he Legislature specifically amended the law in 1980 to create a

28   private right of action under GBL § 349, but declined to do so in other areas, including the

United States District Court
Northern District of California

12

1   Executive Law.").  The Court found persuasive a New York district court's reasoning that

2   violation of section 369-b could not alone establish liability under section 349, which requires a

3   showing "that the defendant has engaged in: (1) consumer-oriented conduct that is (2) materially

4   misleading and that (3) plaintiff suffered injury as a result of the deceptive act or practice."

5   *Worldhomecenter.com, Inc. v. KWC Am., Inc.*, No. 10-cv7781-NRB, 2011 WL 4352390, at *7

6   (S.D.N.Y. Sept. 15, 2011).  The Court joins the *Worldhomecenter.com* court in holding that this

7   "effort to backdoor a § 369–b claim for which there is no private right of action into a [§ 349]

8   deceptive practices claim, while clever, is unavailing."  *Id.* at *8 (internal citation omitted).

9                                    *              *              *

10      The Court concludes that dismissal of Choice's counterclaims for declaratory relief,

11   cancellation of trademark, and Lanham Act false advertising is unwarranted.  To the extent that

12   Choice's state law claims are based on the same underlying conduct as its Lanham Act claim,

13   dismissal of those claims is similarly unwarranted.  To the extent that Choice's state law claims

14   are based on the Corsair Warranty, the Court concludes that Choice has failed to show a concrete

15   and particularized injury within the meaning of Article III and that dismissal pursuant to

16   Rule 12(b)(1) is warranted with leave to amend.  To the extent that Choice's state law claims are

17   specifically based on any alleged underlying violation of New York GBL section 369-b, they fail

18   as a matter of law and must be dismissed pursuant to Rule 12(b)(6) without leave to amend.

19   **IV.   ORDER**

20          For the foregoing reasons, IT IS HEREBY ORDERED THAT:

21          (1) The Corsair Parties' motion to dismiss is DENIED as to Choice's first, second, and

22              third counterclaims.

23          (2) The Corsair Parties' motion to dismiss is GRANTED-IN-PART and DENIED-IN-

24              PART as to Choice's fourth and fifth counterclaims.  Choice's counterclaims arising

25              out of the Corsair Warranty are DISMISSED WITHOUT PREJUDICE, except for its

26              counterclaims arising from GBL § 369-b, which is DISMISSED WITH PREJUDICE.

27          (3) Choice MAY file a second amended answer within fourteen days of the date of this

28              order.  Amendment SHALL be limited to setting forth additional factual allegations to

United States District Court
Northern District of California

13

establish Article III standing.


Dated:  October 3, 2025

_____
BETH LABSON FREEMAN
United States District Judge