K&L GATES

March 16, 2026

The Honorable Nathanael M. Cousins
U.S. District Court, Northern District of California
280 South First Street, Courtroom 4
San Jose, CA 95113

**Re:    *Corsair Gaming, Inc. v. Choice Electronics Inc., C.A. 5:25-cv-00045***
         ***Discovery Letter***

Dear Judge Cousins:

Pursuant to the February 25, 2026 Clerk's Notice (*see* Dkt. 88), the parties jointly submit this discovery letter setting forth their respective positions on outstanding discovery disputes.

**Corsair's Position on its Affirmative Discovery Requests**

At the January 21 discovery hearing (the "Hearing") (*see* Dkt. 81), the parties made the Court aware of several discovery issues present between them. Since that time, Corsair has worked diligently to resolve those issues, has made several document productions, and has repeatedly expressed its willingness to work with Choice to get it whatever information it was entitled to. On the other hand, Choice has taken the position that it will not provide any further information until it first takes Corsair's Rule 30(b)(6) deposition. Choice has repeatedly stated that it will not meaningfully engage on other discovery issues unless and until that deposition occurs. Attached hereto as **Exhibit 2**[1] is a true and correct copy of an email chain between counsel for Corsair and counsel for Choice evidencing Corsair's efforts to resolve these discovery issues without Court intervention, dated February 27, 2026 through March 9, 2026.

Choice's refusal to engage in discovery is both improper and inconsistent with the Court's discovery procedures and warning at the Hearing. Discovery obligations proceed in parallel, and parties must continue producing documents, identifying custodians, and scheduling depositions while other discovery disputes are being addressed. Simply refusing to engage in discovery while awaiting a deposition does little more than stall the entire process.

While Corsair has made multiple document productions, requested search terms from Choice, and provided dates for all depositions requested, Choice's approach has effectively halted

---

[1] Corsair was granted leave of Court to attach emails to the discovery letter. *See* Dkt. No. 91.

K&L GATES LLP
1 CONGRESS STREET   SUITE 2900   BOSTON   MA 02114-2023
T +1 617 261 3100  F +1 617 261 3175  klgates.com
1608568013.1

core discovery.  While insisting that Corsair's deposition occur first, Choice has declined to run any search terms, produce key categories of communications, or provide deposition dates for its own witnesses.

While Corsair is deeply disappointed that more progress could not be made, Choice's refusal to engage in the discovery process leaves it with no option but to raise these issues with the Court.  As such, Corsair identifies below the specific areas where discovery has stalled so that the Court's guidance can move discovery forward efficiently.

### 1. Choice's Refusal to Conduct Searches Using Search Terms

Choice has refused to conduct searches for responsive documents using search terms.

On February 12, Corsair provided proposed search terms to Choice for the purpose of identifying responsive documents.  Choice has refused to run those terms or provide alternative terms.  Instead, Choice has taken the position that it will not run any searches until it takes Corsair's deposition.  Choice's position is improper.  Search terms and custodians are typically addressed through an iterative process in which parties begin searching documents while continuing to refine the scope of discovery. Choice's refusal to run any searches has effectively halted document discovery.

To be clear, Choice previously requested that Corsair run search terms to identify responsive documents.  Indeed, Corsair agreed to run search terms across three proposed custodians and has repeatedly offered to refine the search process if necessary.  Choice, by contrast, has refused to conduct any searches at all, again stating that it would not engage in discovery until it has taken the deposition of Corsair.

Corsair's Specific Request of the Court / Offer of Compromise: Corsair respectfully requests that the Court order Choice to engage in the iterative search term process by promptly running the search terms provided by Corsair on its lone custodian and inform Corsair of the respective hit counts.

### 2. Choice's Failure to Produce Communications With Its Product Source

Choice has failed to produce communications with the source of the products it is accused of reselling. In parallel subpoena enforcement proceeding, Choice's source of NETGEAR products has refused to produce communications arguing that it was unduly burdensome as the documents could be produced by Choice.  The only communication produced to date by Choice is a screenshot of a partial WhatsApp message between the source and Choice.

Moreover, both Choice and its source admit that Choice reached out to its source through its counsel in this case.  However, documents between Choice's counsel and the source have not been produced and no privilege log has been produced (to the extent the documents are alleged to be privileged.). These communications are directly relevant to the claims and defenses in this case. They bear on the source of the products sold by Choice, what Choice knew about those products, and the representations Choice made to consumers.

 March 16, 2026

During the parties' meet and confer discussions, Choice took the position that it did not need to produce additional communications because this issue was not raised during the January Hearing. Discovery obligations, however, are ongoing, and responsive materials must be produced when identified.

Corsair's Specific Request of the Court / Offer of Compromise: Corsair requests that the Court order Choice to produce all communications with its product source, including (1) all WhatsApp messages between Choice and the source and (2) all communications to the source made by Choice's counsel, if they are not privileged. If they are privileged, Choice should be ordered to provide a privilege log in order so that Corsair can evaluate the privilege claim.

### 3. Choice's Refusal to Produce Consumer Complaints and Amazon Communications

Both parties have requested discovery concerning consumer complaints relating to the products at issue. Corsair has agreed to search for and produce such materials upon receipt of search terms from Choice. Choice, however, has declined to conduct comparable searches.

Consumer complaints are directly relevant to issues in this case, including product authenticity, warranty coverage, and alleged consumer confusion. Choice has also received communications from Amazon concerning complaints and potential enforcement actions relating to its product listings. Those communications are relevant to the claims and defenses in this case and go to issues of damages and causation.

While the request seeks internal communications from Amazon, it also encompasses negative reviews left by consumers. Choice has refused to produce these reviews stating that they are publicly available. Ironically, when serve requests for admission asking that they admit that the reviews are publicly available or authentic, Choice denied the requests. As a compromise, Corsair stated that it would print out the reviews if Choice would stipulate that the publicly available documents are authentic copies. Choice declined to stipulate as a means of compromise. For trial purposes, Corsair needs these documents to evidence its claims.

Corsair's Specific Request of the Court / Offer of Compromise: Corsair respectfully requests that the Court order Choice to produce: (1) consumer complaints relating to the products at issue, (2) communications from Amazon concerning such complaints or enforcement actions, (3) internal communications concerning those complaints, and (4) all reviews left by consumers on Choice's webpage. As for the publicly available reviews, Corsair will print out and produce the same so long as Choice admit they are publicly available and authentic.

### 4. Choice's Refusal to Provide Deposition Dates or Addresses for Its Witnesses

Corsair has requested depositions of several Choice witnesses, including Mr. Bentzion Schaffron, Mr. Lester Lugo, the customer service employee identified as "Fahim," and a Rule 30(b)(6) witness for Choice. Despite multiple requests, Choice has declined to provide deposition dates for any of these witnesses.

At the last hearing, Choice took the position that a subpoena was required to compel Mr. Schaffron's attendance at a deposition and represented that it would provide an address for Mr. Schaffron so that a subpoena could be served. Today, at approximately 7 pm, Choice finally

1608568013.1
March 16, 2026

provided an "address" for Mr. Schaffron stating that he could be served at Choice's place of business. No date for the deposition was provided. It took Choice nearly a month to provide this information. This is the perfect example of Choice's gamesmanship throughout this process. Doubling down on the gamesmanship, Choice does not even hide the fact that it is refusing to provide addresses or dates for the other three Choice witnesses requested by Corsair. In their joint case management statement, Corsair and Choice agreed "that they are each limited to 6 non-expert deposition[s] unless good cause exists for additional depositions." *See* Dkt No. 26, p. 7.Choice offers no reason why these depositions should not go forward.

      <u>Corsair's Specific Request of the Court / Offer of Compromise</u>: Corsair respectfully requests that the Court order Choice to either provide deposition dates for these four witnesses identified above or provide addresses so that subpoenas may be issued to those it claims to not represent.

**Choice's Position on Corsair's Affirmative Discovery Requests**

      Contrary to Corsair's arguments above, Corsair has not been "work[ing] diligently to resolve [the discovery] issues" raised by Choice at the January 21 Conference. Rather, Corsair has reneged on the agreements that it made at the Conference—which was to provide ***all*** of the discovery Choice requested at the Conference. Corsair also claims that it "has made several document productions"; but that representation is misleading—Corsair has produced few of the documents that it agreed to produce. To be clear, the email chains that Corsair has attached to this letter are ***not*** representative of the parties' discussions; among other issues, Corsair's tactic is to omit Choice's communications from email chains when Choice points out Corsair's discovery deficiencies and create new e-mail chains that misstate the record (so it can attached them here). To the extent that the Court is interested in seeing the full picture of the parties' written communications, Choice respectfully requests leave to submit its own declaration and exhibits in support of its positions herein.

      Corsair's representation that "Choice[ has] refus[ed] to engage in discovery" is a fabrication. For example, as explained in Choice's motion to adjourn the March 18 Conference (ECF No. 89), in the last month, Corsair has served four sets of discovery requests on Choice, comprising several hundred discrete subparts, and Choice has provided written objections and responses to all of those. It has also engaged in multiple meet and confers with Corsair's counsel. The issue is that ***Corsair refuses*** to follow through with the discovery it agreed to provide at the January 21 Conference, whereas Choice already provided the few items that Corsair requested at that Conference. Accordingly, Corsair is now fabricating new discovery issues that were never previously contemplated or discussed, in an effort to distract from the original issues that continue to require the Court's attention.

    1. **Corsair Seeks to Weaponize the Parties' ESI Protocol by Newly Insisting that Choice Re-Do Its Document Productions Using "Search Terms"**

      First, it is simply untrue that "Choice has taken the position that it will not run any searches until it takes Corsair's deposition." Choice has already made a fulsome document production and, despite the manufactured arguments that Corsair has included in this letter, Corsair decided it was satisfied with that document production, at least by the January 21 Conference. However, now that

4

Corsair has decided to backtrack from the agreements it made at that Conference, Corsair seeks to invent this new issue as a deflection strategy.

By way of background and, as discussed further below, one issue that Choice has raised with *Corsair's* document production is that there are clearly documents that are missing. As a first step to resolve this issue, Choice asked Corsair to comply with the parties' stipulated ESI Protocol and disclose the relevant custodians at Corsair and the search terms that it used to run searches. Although Corsair agreed at the January 21 Conference to work with Choice on this issue, Corsair now *refuses.* After Choice kept following up on this issue after the January 21 Conference, Corsair instead asked, for the first time on February 12, 2026, that Choice run certain, *extremely broad* search terms. For example, these search terms did not just seek documents regarding Choice's sales of CORSAIR-branded products, but regarding Choice's *entire* business (e.g., the combination of the terms "Amazon" and "return"). Moreover, Corsair has never explained why, suddenly, Choice should be required to re-do its entire document production using search terms, or to which document requests Corsair's search terms purportedly relate.   In any event, the agreed ESI Protocol sets forth a procedure for, first, identifying custodians and, second, conducting searches.

Summary of Choice's Position: After Corsair agrees to abide by the ESI Protocol and provide the relevant custodians requested as well as the search terms it has already run, Choice is willing to proceed to the next step and work with Corsair on search terms that relate solely to CORSAIR products and the issues in the case.

## 2. Choice Has Produced All Relevant "Communications With Its Product Source"

Again, Corsair's representation that "Choice has failed to produce communications with the source of the products it is accused of reselling" is simply untrue. As discussed at the January 21 Conference, Choice produced all relevant communications, and Corsair dropped the issue. Corsair has now re-raised this issue without explanation. There is simply no basis to require Choice to produce *all* WhatsApp messages with its product source regardless of topic (e.g., personal, unrelated brands or business) or timeframe; Choice has produced the relevant communications concerning CORSAIR-branded products in its possession, custody, or control and Corsair should not be entitled to fish for unrelated communications concerning the portion of Choice's business that does not concern CORSAIR-branded products.

Corsair now argues that there are communications between Choice and its source concerning a subpoena served by Corsair in this case. Such communications have no relation to any issue in this case, and are protected by at least the attorney-client, work product and/or common interest privileges.

Summary of Choice's Position: Corsair's request to produce *all* communications should be denied; and the relevant communications have already been provided.

## 3. Choice Has Produced All Relevant "Consumer Complaints and Amazon Communications" in Its Possession, Custody, and Control

1608568013.1
March 16, 2026

Yet again, Corsair's representation that "Choice . . . has declined to conduct . . . searches" "concerning consumer complaints relating to the products at issue" is untrue. Choice has already searched for and provided such documents. It is **_Corsair_** that has refused to provide such documents, despite committing to produce them during the January 21 Conference.

To the extent that Corsair is instead requesting consumer complaints regarding non-CORSAIR-branded products, those are irrelevant to any issue in this case. With respect to purportedly "negative reviews" that "are publicly available," Corsair has the ability to print out pages of Amazon.com and attest to the authenticity of the print outs itself—there is no basis to ask Choice to create documents or to "authenticate" documents that were created by Corsair.

Summary of Choice's Position: Corsair's request should be denied, and Corsair should be compelled to produce customer complaints concerning CORSAIR-branded products that it committed to producing.

4. **Corsair Seeks to Deflect from Its Refusal to Sit for a Rule 30(b)(6) Deposition or Provide Dates for Its Witnesses**

As discussed at the January 21 Conference, Mr. Schaffron is not a "managing agent" subject to deposition by notice per Rule 30(b)(1). (*See* ECF No. 77.) Choice agreed to work in good faith to provide Corsair with an address at which Corsair could serve Mr. Schaffron, and Choice has since advised Corsair of an address at which Mr. Schaffron may be served.

For the first time, on February 5, 2026, Corsair advised that it wished to take depositions of additional Choice employees and "a Rule 30(b)(6)" deposition of Choice—despite the fact that it insisted on a deposition of Choice's CEO and sole owner, Mr. Greenspan, back on November 6, 2025. The two additional individuals that Corsair newly seeks to depose are not "managing agents" subject to deposition by notice, they are/were hourly employees that work(ed) in Choice's warehouse. And, on multiple occasions prior to Mr. Greenspan's November deposition, Choice's counsel advised that Mr. Greenspan would be Choice's Rule 30(b)(6) witness and that he would only be made available once. Specifically, on at least September 17, 2025 and October 30, 2025, Choice asked Corsair to send its list of Rule 30(b)(6) topics. Corsair's game-playing to impose additional burden on Choice by making it sit for two depositions should not be condoned. Corsair's eleventh-hour request for 3 additional and unnecessary depositions is petty retaliation for Choice's insistence that Corsair provide proposed deposition dates for its employees, as it promised to do at the January 21 Conference.

Summary of Choice's Position: Choice respectfully requests that Corsair's attempts to harass Choice's employees, and to take a second deposition of Choice, be denied as not proportional to the needs of the case.

**Choice's Position on Its Affirmative Discovery Requests**

As noted above, Corsair has not complied with its commitments at the January 21, 2026 discovery conference before Your Honor. Instead, with very few exceptions, Corsair has essentially failed to provide **_any_** of the discovery it committed to providing at the January 21 Conference, which was detailed in Choice's letters at ECF Nos. 70 and 80, and summarized below:

1608568013.1
March 16, 2026

### 1.  Corsair Should Be Compelled to Appear for Its Re-Noticed Deposition on March 25

As discussed in Choice's recent Administrative Motion to Adjourn the March 18 Conference, Corsair delayed for about a month after the January 21 Conference before providing a new date for a Rule 30(b)(6) deposition, and then failed to appear at that scheduled deposition. (*See* ECF No. 89.) Left with no other options, Choice has agreed to yet another month of delay, and has re-noticed Corsair's Rule 30(b)(6) deposition (for the fifth time) to occur on March 25.

Summary of Choice's Position: Choice respectfully requests that the Court (i) order Corsair to pay the $400 in court reporter fees incurred by Choice for Corsair's non-appearance at the February 27, 2026 deposition; and (ii) order Corsair to appear on March 25 so that Choice can be assured that Corsair will not fail to appear for a fourth time.

### 2.  Corsair Should Be Compelled to Identify Relevant Custodians and Search for Documents

Despite its express commitment to doing so at the January 21 Conference, Corsair has continuously failed to identify custodians from whom relevant ESI must be searched and produced. Despite Choice's attempts to work through these threshold issues during subsequent meet and confers, Corsair has made it clear that it will not disclose the custodians requested by Choice and identified by their "general job titles or descriptions" pursuant to Paragraphs 4(b) and 5 of the ESI Order (ECF No. 49). Instead, Corsair has selected three custodians that he wishes to disclose, rather than the custodians that fall under these descriptions. For example, in response to Choice's request for marketing managers and employees responsible for brand protection, Corsair identified a single individual, which did not include any members of the legal department or an individual with "Senior Manager . . . Marketing Lead" in their title who flagged Choice as a target.  During a conferral, Corsair represented that it ***would not*** search the emails of this senior manager, claiming that such a search was unnecessary because this employee had "nothing to do with" Corsair's marketing, ecommerce, or brand protection efforts. Similarly, Corsair claimed that it did not have employees involved in "brand protection" notwithstanding the fact that its own emails identified numerous employees specifically dealing with such matters. Corsair has simply taken the position that it will not search for ESI from any additional custodians.

As such, Corsair has reneged on its agreement to work with Choice to understand the current gaps in Corsair's document production and then suggest reasonable, and tailored, means to obtain relevant documents that are needed in this action. As discussed in Choice's January 20 letter (ECF No. 80), Corsair has committed to producing documents in response to numerous document requests, but the few documents that Corsair has produced suggest that many more exist. For example, one Corsair employee indicates that he has been pursuing Choice since 2022 because it was purportedly selling CORSAIR products below Corsair's preferred retail price. However, Corsair has not produced any emails from that time period or confirmed that they were searched for. At one point, Corsair indicated that the remaining relevant documents were logged as privileged, but Corsair ***has never produced*** a privilege log (nor would such emails qualify as privileged).

7

Summary of Choice's Position: Corsair should be compelled to: (1) provide a complete list of all custodians with information relevant to this case, including by the descriptions requested by Choice; (2) identify all search terms used to date; and (3) produce a complete privilege log.

**3. Corsair Should Be Compelled to Produce the Documents It Committed to Produce**

At the January 21 Discovery Conference, Corsair committed to produce documents in response to each of the categories complained of in Choice's pre-conference letter (ECF No. 80). However, since that time, Corsair has completely changed positions, and has continued to withhold relevant documents and information that it previously advised would be produced.

*Corsair has still not produced documents concerning listings for Corsair Products.* At the January 21 Conference, Corsair agreed to produce documents in response to RFP Nos. 5, 6, 7, and 8, which seek documents related to listings of CORSAIR products on Amazon. At least in view of Choice's allegations concerning Corsair's misuse of variation relationships for such listings on Amazon, these documents are relevant. However, Corsair has not produced any such documents and its reasons for failing to do so keep changing. Currently, it is hiding behind its demand that it will not search for documents until Choice blindly provide it with "search terms." However, as detailed above, Choice cannot effectively provide *targeted* search terms until it knows how the information is stored by Corsair, which custodians are likely to maintain such information, and search terms already used. Corsair is simply doing everything it can to delay production.

*Corsair has still not produced a complete list of its authorized distributors and business-to-business (B2B) customers.* In response to RFP Nos. 22 and 25, Corsair agreed to produce documents sufficient to identify all of its customers, but Corsair has since backtracked. Corsair states that it has identified all of its "authorized sellers" but has since conceded that it did not, and *would not*, produce documents sufficient to identify its wholesale customers and "authorized distributors." Corsair's trademark infringement claim hinges on the assertion that Choice is not an authorized seller. Thus, Corsair has placed information relating to its customers at the center of the dispute and the discovery sought is relevant.

*Corsair has still not produced documents concerning the purported CORSAIR Warranty.* In response to RFP Nos. 19–20 and 53–555, Corsair agreed to produce documents concerning the purported Corsair Warranty, but Corsair has not yet done so. Again, Corsair's reasons for failing to produce documents keep changing. For this category too, it is hiding behind its demand that it will not search for documents until Choice blindly provide it with "search terms."

*Corsair has still not produced all agreements with authorized resellers.* Corsair agreed at the January 21 Conference to produce its agreements with its purported authorized resellers, in response to RFP Nos. 23, 38 and 40. However, when asked why all such documents had not yet been produced during a March 2 meet and confer, Corsair, for the first time, vaguely raised purported "confidentiality concerns" with producing such documents. Corsair's new and unexplained "confidentiality concerns" do not excuse Corsair's failure to comply with its agreement, especially in view of the Protective Order. This action concerns allegations of trademark infringement, and thus agreements that Corsair has with third-parties concerning use of the mark are certainly relevant.

***Corsair's Enforcement Efforts.*** In response to RFP Nos. 26–27 and 29–34, Corsair agreed at the January 21 Conference to produce Corsair's communications with and about third-parties concerning Corsair's challenges to their resale of CORSAIR products. However, in subsequent meet and confers, Corsair stated that, since Corsair does not have a "brand protection team," it, by extension, does not have anything to produce. Such a position is egregious in view of the fact that its own documentation clearly show that Corsair engages in significant enforcement efforts. Corsair's motivation for bringing this action, and assertions that Corsair has made to third-parties concerning use of the asserted CORSAIR mark are relevant.

***Customer Complaints Concerning CORSAIR Products***. In response to Interrogatory No. 7 and RFP No. 18, Corsair agreed at the January 21 Conference to identify customer complaints it has received concerning CORSAIR products. During the parties' March 2 conferral, however, Corsair advised that it will only search for customer complaints after Choice blindly provides it with "search terms." But, when Choice proposed, for the sake of discussion, the term "warranty," Corsair advised that it would not run such a search. Corsair should be compelled to produce its full list of customer complaints, as it sells CORSAIR-branded products and Corsair has not explained any burden in producing such documents. These customer complaints are relevant to Corsair's allegations that Choice is selling CORSAIR products of a different condition than genuine products sold by Corsair, and seeks to rely on consumer reviews purportedly left for Choice. Accordingly, reviews left for Corsair are, at a minimum, relevant to rebutting the consumer reviews that Corsair seeks to use in this action.

***Corsair Must Disclose Its Damages Theory or Be Foreclosed from Seeking a Monetary Recovery.*** In response to Interrogatory No. 9, which seeks an identification of "the amount of money Plaintiff contends it is entitled to under" "each theory of recovery being sought by Plaintiff in this action," Corsair originally responded that the "request [i]s premature." Since the January 21 Conference, Corsair supplemented its response to state that it seeks "(1) defendant's profits, (2) any damages sustained by Corsair, and (3) the costs of the action." But Corsair still has not yet provided "a computation of each category of damages claimed" as required by the Rule 26(a)(1)(A)(iii), either in its supplemental interrogatory response or Rule 26(a) initial disclosures.

Summary of Choice's Position: Corsair should be compelled to produce each of the categories of documents, and provide full answers to Interrogatories 9 and 10, as it committed to do during the January 21 Conference.

**Corsair's Position on Choice's Affirmative Discovery Requests**

Choice is arguing for argument's sake, as every issue that it has identified as being in dispute, Corsair has worked diligently to resolve. Indeed, as shown below, every issue raised here by Choice was addressed by Corsair. Email Exhibits 2 & 3, demonstrate that lengths that Corsair has gone through to work with Choice to provide it whatever information it is seeking.

**Corsair's Deposition was Cancelled Due to a Snowstorm and Loss of Power.** As set forth in detail and supported by declaration, the February 27 deposition was cancelled in the immediate aftermath of a severe winter storm in the Boston area that caused widespread power outages and

1608568013.1
March 16, 2026

disruption. *See* Dkt. No. 92. After receiving notice from the power company that power would not be restored before the deposition was scheduled to begin, the undersigned promptly informed Choice's counsel of the situation and the need to reschedule. *See* Exhibit 1.  The deposition was then rescheduled to March 25 by agreement of the parties. Despite clear notice that Corsair could not proceed because its counsel was without power, Choice elected to move forward. Under these circumstances, Corsair should not be required to pay the court reporter's fees.

Moreover, Corsair incurred its own court reporter costs for a deposition of Mr. Schaffrom at which Choice failed to appear. While Corsair maintains that these issues are effectively moot given that the depositions have been rescheduled, the equitable result is that either both parties be reimbursed their own costs or neither party seeks reimbursement. Corsair's preference is that each side bear its own costs, as rescheduling due to unforeseen circumstances does not justify cost shifting

**Custodians and Documents**. As another example of creating a dispute where none exists, Choice argues that Corsair "continuously failed to identify custodians" with relevant information. A quick review on emails Exhibits 2 & 3 shows the list of custodians provided by Corsair.  The emails further show that Corsair has continuously asked for search terms to be run on its custodians to ensure that the parties remain on the same page.  For reasons unknown, Choice refuses to provide the search terms it wants run on the three custodians offered by Corsair.  If this dispute were truly about about documents rather than creating disputes, Chocie would have provided search terms to be run on the offered Corsair custodians.

**Documents.**  As shown by the emails in Exhibits 2 & 3, Corsair has already provided all documents in its possession that can be readily identified without the use of search terms.  It has provided a full list of its authorized dealers, agreements with those dealers, a copy of its warranty, and any other *specific document* that Choice has sought.  It is impossible for Corsair to identify "every document" concerning warranty, enforcement, complaints, and Amazon listings without the use of search terms.  Again, Corsair has continuously asked for search terms that Choice has refused to provide.

As to damages, Corsair has provided Choice with a detailed answer to how it will assess its damages.  In short, Corsair's actual damages will be calculated using a model that calculates the units sold by Corsair's anticipated profit for each sale of that model.  Corsair will also seek disgorgement of Choice's profits.  However, Choice continues today to sell Corsair products, thus the damages number is not static and is continuously changing.  Under these circumstances, Corsair is not required to provide an exact damages calculation given that it has provide exactly how it will determine damages.

1608568013.1
March 16, 2026

Respectfully submitted,

*/s/ K. Taylor Yamahata*
K. Taylor Yamahata

Counsel for Plaintiff Corsair Gaming, Inc.

1608568013.1
March 16, 2026